UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT RAY ELLIS,<br><br>  Plaintiff,<br><br>  v.<br><br>CAROLYN W. COLVIN,[1] Acting Commissioner of Social Security<br><br>  Defendant. | **1:13-cv-1326 GSA**<br><br>**ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT** |

**INTRODUCTION**

Plaintiff Robert Ray Ellis ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for disability insurance benefits under Title II of the Social Security Act.  The matter is pending before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Gary S. Austin, United States Magistrate Judge.[2]

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin is substituted for Michael J. Astrue as the defendant in this action.

[2] The parties consented to the jurisdiction of a United States Magistrate Judge.  *See* Docs. 7 & 8.

**SUMMARY OF THE ADMINISTRATIVE PROCEEDINGS**

Plaintiff filed a Title II application for disability insurance benefits on April 22, 2010, alleging disability beginning on June 1, 2007.[3]  AR 34.  His claim was denied initially and upon reconsideration.  AR 66-70, 74-79.  Subsequently, on March 28, 2012, an administrative law judge ("ALJ") conducted a hearing on Plaintiff's claim.  AR 28-63.  Plaintiff was represented by an attorney and testified at the hearing; a vocational expert also appeared and testified.  AR 28-63.  On April 15, 2012 the ALJ found that Plaintiff was not disabled.  AR 10-17.  The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision.  AR 1-3.  Plaintiff then commenced this action in District Court.

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether (1) it is supported by substantial evidence and (2) it applies the correct legal standards. *See Carmickle v. Commissioner*, 533 F.3d 1155, 1159 (9th Cir. 2008); *Hoopai v. Astrue*, 499 F.3d 1071, 1074 (9th Cir. 2007).

"Substantial evidence means more than a scintilla but less than a preponderance." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).  It is "relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Id.*  Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Id.*  The ALJ's findings will be upheld "if supported by inferences reasonably drawn from the record." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004).

///

---

[3] Mr. Ellis may initially have alleged a disability onset date of February 28, 2010, but at the hearing before the ALJ his attorney represented that he was alleging a disability onset date of June 1, 2007, which was the date he stopped working.  See AR 34, 144.

**ISSUES PRESENTED FOR REVIEW**

Plaintiff argues that the Court should reverse the Commissioner's determination and order the payment of benefits, or, alternatively, remand for further proceedings, because (1) the ALJ did not provide legally sufficient reasons for rejecting the opinion of Consultative Examiner Sarah Song, M.D., who performed the orthopedic consultative examination in this case; and (2) the ALJ did not give legally sufficient reasons for discounting Plaintiff's credibility with regard to his testimony at the administrative hearing.  Doc. 15.  The Commissioner responds that the ALJ properly evaluated the medical evidence and Plaintiff's credibility.  Doc. 17.

**DISCUSSION**

**A. The ALJ Properly Discounted Plaintiff's Subjective Symptom Testimony**

(i)  <u>Summary of Plaintiff's Testimony</u>

On March 28, 2012, Plaintiff testified at a hearing before an ALJ and was represented by counsel.  AR 28-36.  Plaintiff had a limited education, had been a mechanic in the Army, and then was a foreman in the pipeline-construction industry for many years.  AR 39; 41; 42.

When asked by the ALJ why he could not work, Plaintiff answered as follows: "Well, the reason why is my back is killing me, and then a lot of times I run out of breath.  I just can't even, you know, go to the mailbox, you know, and I'm aching and breathing hard."  AR 47. When the ALJ asked what caused his back to hurt, Plaintiff stated as follows: "No.  I don't know. It's arthritis, I know they, you know, got the thing, you know.  It'll just, all of [a] sudden, ma'am, I could be sitting right here and jumping like crazy because my shoulder feels like it's getting an ice pick jabbed in it from a pinched nerve."  AR 47.  Plaintiff testified that his neck and his back were "just tearing [him] up" during the hearing, and, more specifically, that his pain was 8 out of 10 (with a 10 being at the level where one would have to go to the emergency room) at the time. AR 48.  Plaintiff further testified that his pain is often an 8 out of 10 even after taking medication,

and that at best, when he is feeling better, it goes down to a 5.  AR 48.  Plaintiff stated that on the day of his hearing he had taken Advil for his pain, but that he also uses Celebrex.  AR 49.  Plaintiff also testified that he smoked 5-6 cigarettes a day despite suffering from COPD, and drank alcohol several times a week, sometimes "all week long," with his friends.  AR 49-50.  Plaintiff testified that in the past he would forget to take his hypertension medication, but that he had procured a weekly pill dispenser to help him remember to take it.  AR 51.  Plaintiff testified that he could comfortably lift and carry 5 pounds; that it would be hard for him to sit continuously for 2 hours at a time; and that he had to lie down three or four times a day for a total of 1-2 hours per day.  AR 53-54.  Plaintiff testified that he drove two to three times a week to go to the grocery store and to see friends, and that he had driven himself to the hearing.  AR 37-38.  Plaintiff had "never thought about" using public transportation.  AR 38.

        (ii)      <u>Applicable Law</u>

In evaluating the credibility of a claimant's testimony regarding subjective complaints of pain and other symptoms, an ALJ must engage in a two-step analysis.  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).  First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment that could reasonably be expected to produce the pain or other symptoms alleged.  *Id*.  The claimant is not required to show that the impairment "could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom."  *Id*.  If the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony regarding the severity of the symptoms if she gives "specific, clear and convincing reasons" for the rejection.  *Id*.

Regarding credibility determinations by an ALJ, the Ninth Circuit has held as follows:

> The ALJ may consider many factors in weighing a claimant's credibility, including (1) ordinary techniques of credibility evaluation, such as the claimant's reputation

> for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities.  If the ALJ's finding is supported by substantial evidence, the court may not engage in second-guessing.

*Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir.2008) (citations and internal quotation marks omitted); *see also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226–27 (9th Cir. 2009); 20 C.F.R. §§ 404.1529, 416.929; Social Security Ruling ("SSR") 96-7p, available at 1996 WL 374186.  Other factors the ALJ may consider include a claimant's work record and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains.  *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).  Finally, an ALJ's credibility finding must be properly supported by the record and sufficiently specific to assure a reviewing court that the ALJ did not "arbitrarily discredit" a claimant's subjective testimony.  *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (citing *Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991) (en banc)).

       (iii)    <u>Analysis</u>

In this case, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms. AR 15.  However, the ALJ further determined that Plaintiff's statements about the intensity, persistence, and limiting effects of those symptoms were not credible to the extent they were inconsistent with her assessment of Plaintiff's residual functional capacity.  AR 15.  Absent affirmative evidence of malingering, the ALJ was required to provide clear and convincing reasons for discounting Plaintiff's subjective symptom testimony.

The ALJ discounted Plaintiff's subjective symptom testimony on the following grounds: (1) Plaintiff's complaints lacked objective support in the record; (2) Plaintiff appeared to exaggerate his symptoms at the hearing and his demeanor belied his complaints; (3) even after his

alleged disability onset date, Plaintiff occasionally worked part-time and engaged in activities such as deer hunting, camping, and playing soccer which were incompatible with his allegations of totally disabling symptoms. AR 15-16. As discussed below, the Court finds that the ALJ gave clear and convincing reasons supported by the record to discount Plaintiff's credibility.

First the ALJ found that the objective medical evidence in the record did not support Plaintiff's subjective complaints. AR 15 ("his credibility is diminished by the medical evidence"). Specifically, the ALJ noted that Plaintiff complained of shortness of breath but there were no "objective signs of shortness of breath in the progress notes." AR 15. The ALJ further noted that "[t]he radiographic evidence and treatment records do not support the claimant's testimony that he can lift and carry [only] 5 pounds, has to lie down a lot during the day (3 to 4 times for a total of 1-2 hours per day), and that it is hard to sit for 2 hours without getting up." AR 16. Although an ALJ may not rely solely on the inconsistency between objective findings and a claimant's subjective claims in order to reject the latter, *Light*, 119 F.3d at 792, an ALJ may properly consider such an inconsistency as one factor among others in making his credibility determination. *Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999). Here the ALJ gave multiple reasons for discounting Plaintiff's testimony; accordingly the ALJ's analysis of the inconsistency between Plaintiff's subjective complaints and the objective medical evidence constitutes a specific, clear and convincing reason, supported by the record as a whole, for his adverse credibility determination.

Next, the ALJ found that "the claimant's testimony appeared exaggerated." AR 16. The ALJ noted that Plaintiff testified that his pain level during the hearing was 8 out of 10 after taking Advil but not Celebrex. The ALJ discounted Plaintiff's testimony because Plaintiff "did not demonstrate any trouble sitting throughout the hearing and did not appear to be in any significant

6

pain. The claimant was able to concentrate and answer questions, although he was very talkative and added more to the question than asked." AR 16. The ALJ properly relied on Plaintiff's demeanor as one of many factors for discounting his testimony regarding the severity of his symptoms and their limiting effects. *See, e.g., Fanale v. Astrue*, 322 F. App'x 566, 567 (9th Cir. 2009) (claimant's demeanor at hearing amounted to clear and convincing reason for discrediting her subjective complaints); *Matney on Behalf of Matney v. Sullivan*, 981 F.2d 1016, 1020 (9th Cir. 1992) (holding that district court properly affirmed the ALJ where ALJ's credibility finding was based on claimant's daily activities, "his demeanor and appearance at the hearing," as well as his well-documented motivation to obtain social security benefits"); *DeMaio v. Astrue*, 2011 WL 837180 at *12 (E.D. Cal. Mar. 7, 2011) ("This Court will not dispute the subjective credibility assessment of the ALJ, who was present to watch and listen to the testimony first hand."); *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (in rejecting claimant's testimony, ALJ properly relied on her "demeanor at the hearing" where "she seemed to engage in considerable histrionic exaggeration").

Plaintiff's attorney informed the ALJ at the hearing that Plaintiff was alleging a disability onset date of June 1, 2007, which was the date that he stopped working. AR 34. The ALJ noted, however, that "[i]n September 2008, [Plaintiff had] stated that he occasionally engaged in part-time work." AR 15, 213. The ALJ's reliance on Plaintiff's ability to continue to work part-time on occasion counts as a specific, clear and convincing reason for discounting Plaintiff's allegations of totally disabling symptoms. *See Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997) (a claimant's work record is a relevant factor in evaluating the credibility of his subjective complaints).

The ALJ also relied on Plaintiff's daily activities in discounting his subjective complaints of disabling symptoms. AR 15. For example the ALJ noted that the Plaintiff "drives and spends

time drinking with his friends about 2 to 5 times per week." AR 15. The ALJ further observed that a November 2010 progress note indicated that Plaintiff goes camping and deer hunting, and that a June 2008 note indicated that he played soccer, all of which undercut his allegations of total disability.[4] AR 15; 205; 317. The ALJ's reliance on the inconsistency between Plaintiff's activities and his subjective complaints of totally disabling symptoms is supported by substantial evidence and the Court may not second-guess the ALJ's determination. *See, e.g., Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (claimant's "ability to perform various household chores such as cooking, laundry, washing dishes and shopping," among other factors, bolstered "the ALJ's negative conclusions about [her] veracity"); *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012) ("[e]ven where [the daily] activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment"); *Orn v. Astrue*, 495 F.3d 625, 639 (2007) (claimant's daily activities that contradict claimant's other testimony vitiate claimant's credibility).

In sum, the ALJ cited specific, clear and convincing reasons, based on permissible grounds and supported by the record as a whole, for rejecting Plaintiff's subjective complaints.[5] *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196-97 (9th Cir. 2004). As such, the ALJ's credibility determination is proper.

---

[4] Another progress note, dated September 10, 2008, states that Plaintiff went on a gold dredging trip. AR 213.

[5] The Court is not persuaded by an additional reason that the ALJ provided for discounting Plaintiff's testimony regarding his subjective complaints, namely that Plaintiff "continues to smoke despite his COPD." AR 15. It is certainly possible that Plaintiff was so addicted to cigarettes that he continued smoking despite his COPD. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009) (citing *Shramek v. Apfel*, 226 F.3d 809, 812–13 (7th Cir. 2000) (noting, in dicta, that nicotine's addictive properties made it "extremely tenuous" to discredit a claimant's description of her impairments based on the claimant's continued smoking). However, the ALJ provided four other independent bases for discounting Plaintiff's testimony, and each finds ample support in the record. Thus, the ALJ's reliance on Plaintiff's continued smoking, even if erroneous, amounts to harmless error. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir.2004) (concluding that, even if the record did not support one of the ALJ's stated reasons for disbelieving a claimant's testimony, the error was harmless); *Carmickle v. Comm'r of Social Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008) (the inclusion of improper reasons does not negate an overall adverse credibility determination); *Kibble v. Comm'r Soc. Sec. Admin.*, 2014 WL 4290790 at *1 (9th Cir. Sept. 2, 2014).

**B. The ALJ Properly Rejected the Opinion of Consultative Examiner Song**

In assessing Plaintiff's RFC, the ALJ rejected the opinion of Consultative Examiner Sarah Song, M.D., a neurologist who performed the orthopedic consultative examination in this case. Rather, the ALJ based his RFC determination on the opinions of two state agency reviewing physicians and other medical evidence in the record. The Court finds that the ALJ gave legally sufficient reasons for rejecting Dr. Song's opinion, and that his RFC determination is supported by substantial evidence in the record as a whole.

> (i) Legal Standard for Discounting a Non-Treating Consultative Examiner's Opinion in Favor of a State Agency Reviewing Physician's Opinion

In disability proceedings, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion is given more weight than that of a non-examining physician. *Benecke v. Barnhart*, 379 F.3d 587, 592 (9th Cir. 2004); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). If the treating or examining physician's opinion is not contradicted, it can be rejected only for clear and convincing reasons. *Lester*, 81 F.3d at 830. If contradicted, the opinion can only be rejected for "specific and legitimate" reasons that are supported by substantial evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995).

The opinion of a non-examining physician cannot *by itself* constitute substantial evidence to justify the rejection of the opinion of either an examining physician or a treating physician. *Lester*, 81 F.3d at 831, citing *Pitzer v. Sullivan*, 908 F.2d 502, 506 n. 4 (9th Cir. 1990). However, the opinion of a non-examining physician may constitute substantial evidence if it is supported by other evidence in the record and is consistent with it. *Andrews*, 53 F.3d at 1041, 1043; *Lester*, 81 F.3d at 830-831, citing *Magallanes v. Bowen*, 881 F.2d 747, 751–55 (9th Cir. 1989) (approving the ALJ's decision to reject the opinions of Magallanes' treating physicians because in so doing, the ALJ did not rely on the nonexamining physician's testimony *alone*); *Roberts v. Shalala*, 66

F.3d 179,184 (9th Cir. 1995) (affirming ALJ's rejection of examining psychologist's functional assessment which conflicted with non-examining medical advisor's testimony and with his own written report and test results).

The Ninth Circuit has explained that "the type of evidence and reasons that would justify rejection of an examining physician's opinion might not justify rejection of a treating physician's opinion." *Lester*, 81 F.3d at 831, n. 8.  While Ninth Circuit "cases apply the same legal standard in determining whether the Commissioner properly rejected the opinion of examining and treating doctors—neither may be rejected without 'specific and legitimate' reasons supported by substantial evidence in the record, and the uncontradicted opinion of either may only be rejected for 'clear and convincing' reasons—[they] have also recognized that the opinions of treating physicians are entitled to greater deference than those of examining physicians." *Id.* (citations omitted).  "Thus, reasons that may be sufficient to justify the rejection of an examining physician's opinion would not necessarily be sufficient to reject a treating physician's opinion. Moreover, medical evidence that would warrant rejection of an examining physician's opinion might not be substantial enough to justify rejection of a treating physician's opinion." *Id*.

    (ii)    <u>Analysis</u>

The ALJ found that the Plaintiff retained the RFC to perform the full range of medium work.  In assessing Plaintiff's RFC, the ALJ gave "great weight to the State agency medical consultants because their opinions are well supported and most consistent with the longitudinal medical evidence." AR 15.  However, the ALJ gave "no weight" to the RFC opinion of Dr. Song, who limited Plaintiff to light work.  AR 15.

Plaintiff argues that the ALJ improperly rejected Dr. Song's opinion because Dr. Song examined Plaintiff and based her assessment that Plaintiff was limited to light work on examination findings showing a reduced range of motion of the cervical spine and kyphosis of the

10

cervical spine. Plaintiff also points out that Dr. Song found that Plaintiff's left shoulder was held up higher than his right shoulder and that he experienced pain when extending his arms overhead. Doc. 12 at 5, 15. The Commissioner responds that ALJ reasonably gave no weight to Dr. Song's assessment because "she was a one-time examining physician;" "her objective findings were mild;" and "she based her opinion as to Plaintiff's limitations primarily on his subjective complaints," specifically "his subjective allegations of pain when he elevated his arms overhead." Doc. 17 at 5. The Commissioner further asserts that the ALJ properly relied on the opinions of the state agency medical consultants, Dr. Haaland (an orthopedic specialist) and Dr. Orenstein.

In his decision, the ALJ summarized and interpreted all the medical record evidence and made findings to resolve conflicts in the medical opinion evidence. With regard to Dr. Song's August 21, 2010 examination and opinion, the ALJ noted as follows:

> The undersigned gives no weight to Dr. Song's assessment because the neurologist recommended that he be limited to light work but this was based on alleged pain when the claimant elevated his arms overhead. As Dr. Haaland recognized, there was no evidence neurologically of radiation or radiculopathy into the upper extremity, there was normal range of motion of all joints and 5/5 strength overall, T-L exam was normal, straight leg raising was normal, and the claimant takes no pain medications.[6]

AR 15. The ALJ correctly observed that Dr. Song's opinion reflects generally mild findings. AR 290-294. The only problems Dr. Song noted were a "reduced range of motion" and "some curvature" of the cervical spine, and that Plaintiff had "difficulty holding his arms up over the shoulder level." AR 293. Dr. Song accordingly diagnosed Plaintiff with cervicalgia. Dr. Song's examination revealed normal findings regarding the range of motion of the lumbar spine and all joints, including the shoulders, elbows, writs, hips, knees, and ankles, as well as normal findings regarding straight leg raising and hand grip strength. 291-292. Dr. Song's examination further revealed normal neurological findings and motor strength regarding all joints including shoulders,

---

[6] Plaintiff informed Dr. Song at the time of the consultative examination that the only medications he was taking were Lisinopril, Pro-Air, Advair, and Spiriva, none of which appear to be pain medications.

elbows, hips, knees, and feet. Finally, Dr. Song took a history from Plaintiff and reported that Plaintiff took Lisinopril, Pro-Air, Advair, and Spiriva, but listed no pain medications. AR 290.

The ALJ gave specific and legitimate reasons for rejecting Dr. Song's assessment that Plaintiff was limited to a range of light exertional activity. First, because the ALJ properly rejected Plaintiff's credibility as discussed above, she correctly discounted Dr. Song's opinion to the extent it was based on Plaintiff's subjective reports that he experienced pain when holding his arms overhead. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) ("An ALJ may reject a treating [or examining] physician's opinion if it based 'to a large extent' on a claimant's self-reports that have been properly discounted as incredible."); AR 15. Next the ALJ discounted Dr. Song's opinion because "there was no evidence neurologically of radiation or radiculopathy into the upper extremity" and "normal range of motion of all joints and 5/5 strength overall." AR 15. The ALJ further observed that Dr. Song's thoracic-lumbar spine and straight leg raising findings were normal, and that at the time of the examination, Plaintiff was taking no pain medication. AR 15. Finally, the ALJ found that Dr. Song's assessment was not consistent with the longitudinal medical evidence in the record. The ALJ referenced a March 2010 cervical spine x-ray report that noted "a normal curvature in the cervical spine."[7] AR 13; 275. She noted that Plaintiff's treating physician, Dr. Leyba, performed a physical examination on Plaintiff in May, 2010, and found "normal range of motion of the cervical spine" and "unremarkable shoulders," among other relatively mild findings. AR 14, 202 ("both shoulders are unremarkable"). The ALJ noted that Dr. Leyba assessed DISH disease and commented that he wanted to try anti-inflammatory medications. AR 14; 201-202. The ALJ also observed that "March 2012 x-rays of the thoracic spine reflected mild osteopenia and moderate degenerative changes while imaging of the cervical spine indicated mild osteopenia and minimal degenerative changes." AR 15; 350-

---

[7] The March 2010 report also revealed "severe facet arthropathy" of the cervical spine, as noted by the ALJ.

12

351. The ALJ concluded that the state agency physicians' opinions were more consistent with the longitudinal evidence as compared to Dr. Song's opinion. The ALJ's conclusion, as well as his reasons for discounting Dr. Song's opinion, are supported by substantial evidence in the record as a whole (see below).

In assessing Plaintiff's RFC, the ALJ considered all the evidence in the record. He found that Plaintiff had the RFC to perform the full range of medium work as defined in 20 CFR 404.1567(c). AR 13. In formulating Plaintiff's RFC, he accorded "great weight" to the opinions of the state agency medical consultants. AR 15. The state agency medical consultants that the ALJ relied upon were Dr. Haaland, an orthopedic specialist, and Dr. Orenstein. Dr. Haaland specifically reviewed Dr. Song's assessment and other evidence in the record, and noted as follows:

> 53 yo M with age compatible DDD and DJD of the Cx spine. He has no evidence neurologically of radiation or radiculopathy into the UEs. He has normal ROM of all joints and 5/5 strength. His T-L exam is normal and he has normal SLR. He takes no pain meds. The neurologist recommended that he be limited to light work, but this was based on the pain he alleged when he elevated his arms overhead. He best would be limited to medium work as that corresponds more to the findings on PE. He does have COPD, but he does not meet or equal a listing. He is partially credible.

AR 304.

Dr. Orenstein also reviewed the medical evidence, including Dr. Song's evaluation. With regard to Dr. Song's opinion, Dr. Orenstein noted as follows:

> CE exam of 8/2010 noting decrease in ROM of neck and pain when arms are elevated but no other neurologic or orthopedic abnormalities at time of CE to suggest neuropathy or radiculopathy. [M]otor/sensory normal with diagnosis of cervicalgia …. CE/MSS of 8/10 is overly restrictive based on objective findings at time of Mer which only notes mild decrease in ROM of neck and pain on arm elevation above head which does not justify limitation of CE examiner.

AR 330. Dr. Orenstein also concluded that Plaintiff had the RFC to perform medium work.

The ALJ gave "great weight" to the opinions of Dr. Haaland and Dr. Orenstein in finding that Plaintiff had the RFC to perform the full range of medium work. The ALJ reasoned that the RFC assessments of Dr. Haaland and Dr. Orenstein were more consistent with the longitudinal evidence as compared to Dr. Song's RFC assessment, which was not compatible with her objective findings and therefore appeared to be based, to a large extent, on Plaintiff's subjective complaints of pain when he raised his arms overhead. *See Bray v. Comm. Soc. Sec. Admin.,* 554 F.3d 1219, 1227-28 (9th Cir. 2009) (in making RFC determination, ALJ properly rejected treating physician's opinion in favor of state agency physician's opinion, when the latter's opinion was more consistent with the longitudinal medical evidence and the treating physician's opinion was based on the claimant's subjective characterization of her symptoms which had been properly found to be not entirely credible).

The ALJ's conclusion is supported by substantial evidence in the record as a whole. Dr. Orenstein noted that Dr. Song's physical examination of Plaintiff in August, 2010 revealed only a "mild decrease in ROM of neck and pain on arm elevation above head which does not justify limitation of CE examiner." AR 330. Similarly, Dr. Haaland noted that Dr. Song's physical examination findings were not sufficiently severe as to preclude medium work. AR 304. Dr. Orenstein concluded that Plaintiff's "long standing neck and back pain [were] likely due to DISH syndrome and DDD of the C spine." AR 330. These assessments and conclusions of the state agency physicians are supported by the findings of Plaintiff's treating physicians. For example in May 2010, just a few months before Dr. Song's August 2010 examination of Plaintiff, Dr. Leyba found that Plaintiff had a normal range of motion of the cervical spine and unremarkable shoulders. AR 202. Furthermore, a March 2010 cervical spine x-ray report noted that Plaintiff had "a

normal curvature in the cervical spine," while imaging of the cervical spine in March 2012 indicated "mild osteopenia and minimal degenerative changes." AR 275; 351.  In formulating his RFC assessment, the ALJ properly evaluated the medical evidence and appropriately resolved conflicts.  In sum, the ALJ properly relied on the opinions of Dr. Haaland and Dr. Orenstein as well as other evidence in the record, and gave specific and legitimate reasons supported by the substantial evidence in the record for rejecting the opinion of Dr. Song.[8]

## CONCLUSION

The Court finds that the ALJ's decision is free of legal error and is supported by substantial evidence in the record as a whole.  Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security.  The Clerk of this Court is DIRECTED to enter judgment in favor of Defendant Carolyn Colvin, the Acting Commissioner of Social Security, and against Plaintiff Robert Ray Ellis.

IT IS SO ORDERED.

Dated:   **March 11, 2015**                             **/s/ Gary S. Austin**
                                                                    UNITED STATES MAGISTRATE JUDGE

---

[8] Plaintiff also appears to argue that the ALJ did not properly consider non-exertional limitations identified by Dr. Orenstein. Doc. 9 at 15.  However, Plaintiff does not identify which non-exertional limitations Dr. Orenstein found.  Indeed Plaintiff entirely fails to develop the facts or analysis applicable to this argument.  The Court therefore declines to consider this argument.  In any event, the ALJ gave "great weight" but not controlling weight to Dr. Orenstein's opinion. *See, e.g.,* 20 C.F.R. § 404.1527; Social Security Ruling 96-2p.